JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | CV 10-02367 MMM (AGRx) |
| | Date  June 8, 2010 |

| | |
|---|---|
| Title | *Nelissa Adelpour and Kevin Shenkman, et al. v. Panda Express, Inc, et al.* |

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | None |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **Order Remanding Action**

### I.  BACKGROUND

On November 12, 2009, plaintiff Nelissa Adelpour, individually and on behalf of other similarly situated indiviuials, filed a class action against defendants Panda Express, Inc. ("Panda Express"), Panda Restaurant Group, Inc. ("PRG"), and certain fictitious defendants in Los Angeles Superior Court.[1]  In her complaint, plaintiff Adelpour sought to represent the following class:

> "All California residents who abstain from consuming animal flesh or animal products for any reasons such as dietary restrictions, religious beliefs or ethical reasons, and who purchased the food products 'Steamed Veggies,' 'Eggplant & Tofu,' 'String Beans with Tofu,' 'Sauteed String Beans,' 'Vegetable Fried Rice,' or 'Vegetable Chow Mein' at or from a Panda Express restaurant located in the State of California at anytime during the four years preceding the filing of the Complaint to class certification."[2]

---

[1] Class Action Complaint ("Complaint"), attached as Exh. B to Notice of Removal of Civil Action from State Court ("Notice of Removal"), Docket No. 1 (Mar. 31, 2010).

[2] *Id.*, ¶ 27.

On March 2, 2010, Adelpour, together with a second class representative, Kevin Shenkman, filed a first amended class action complaint in Los Angeles Superior Court.[3] In the first amended complaint, plaintiffs proposed to represent two classes:

> (a) All California residents who purchase vegetarian or meat-free dishes and purchased the Subject Food Products at or from a Panda Express restaurant located in the State of California at any time during the period of four years preceding the filing of the Complaint to class certification (the 'Defrauded Class').
> (b) All California residents who abstain from consuming animal flesh or products of animal slaughter for any reasons such as dietary restrictions, religious beliefs, or ethical reasons, and who purchased the Subject Food Products at or from a Panda Express restaurant located in the State of California at any time during the period of four years preceding the filing of the Complaint to class certification. (the 'Vegetarian Class')."[4]

Defendants removed the action to this court on March 31, 2010, asserting that it fell within the court's diversity jurisdiction. In their notice of removal, defendants assert that their removal was timely because the redefinition of the class in the first amended complaint put them on notice for the first time that minimal diversity existed. Given this change, they maintain that the case was not removable until March 2, 2010, and thus that removal was timely.

## II. DISCUSSION

### A.   Procedural Standard for Removal

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988)

Parties seeking to remove must comply with certain procedural mandates. Among these is a requirement that a notice of removal be filed within thirty days after service of the summons and

---

[3]First Amended Class Action Complaint ("FAC"), attached as Exh. H to Notice of Removal.

[4]*Id.*, ¶ 29.

complaint. 28 U.S.C. § 1446(b); see *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). The statute provides for a renewed thirty-day removal period if the original complaint is not removable. This period commences upon defendant's receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b).

The removing defendant bears the burden of establishing that removal is proper. See *Gaus v. Miles*, 980 F. 2d. 564, 566 (9th Cir. 1992); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); see also *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996) (when removing a case to federal court, defendants bear the burden of proving, by a preponderance of the evidence, actual facts sufficient to support jurisdiction). The removal statute is strictly construed against removal, and all doubts respecting jurisdiction are resolved in favor of remand. *Gaus*, 980 F.2d at 566; *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).

In *Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689 (9th Cir. 2005), the Ninth Circuit clarified certain ambiguities regarding the timely removal requirement. It held:

> "The statute provides two thirty-day windows during which a case may be removed – during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'
> Three removal scenarios are presented in a potential diversity case: 1) the case clearly is removable on the basis of jurisdictional facts apparent from the face of the complaint. . . ; 2) the case clearly is not removable on the basis of jurisdictional facts apparent from the face of the complaint . . . ; or 3) it is unclear from the complaint whether the case is removable . . . . This latter scenario [is] sometimes referred to as an 'indeterminate' pleading . . . ." *Id.* at 692-93 (quoting 28 U.S.C. § 1446(b)).

In *Harris*, the initial state court pleading did not set forth the citizenship of one defendant. The question, which had been a question on which circuits had disagreed, but on which the Ninth Circuit had not spoken, was whether any burden "lies with the defendant to investigate the necessary jurisdictional facts within the first thirty days of receiving an indeterminate complaint, or whether the determination be limited to the face of the initial pleading." *Id.* at 693.

The Ninth Circuit concluded that

> "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry. Thus, the first thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal. If no ground for

removal is evident in that pleading, the case is 'not removable' at that stage. In such case, the notice of removal may be filed within thirty days after the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper." *Id.* at 694.

As can be seen, *Harris* plainly contemplates two thirty-day windows. The first commences with service of the initial complaint in state court. In a case that is not removable based on the initial complaint, "if it is rendered removable by virtue of a change in the parties or other circumstance revealed in a newly-filed 'paper,' then the second thirty-day window is in play." *Id.*[5] In *Harris*, while the citizenship of one defendant was unknown, when plaintiff sent a letter indicating his intention to abandon suit against that defendant, that letter constituted a "paper" triggering the second thirty-day window.[6]

The *Harris* court emphasized two concerns about a rule that would require inquiry concerning a defendant's subjective knowledge of jurisdictional facts. First, the court feared that requiring a defendant to act on its subjective knowledge would spawn collateral litigation or "'mini-trial[s] regarding who knew what and when.'" *Id.* at 695, 697 (quoting *Lovern*, 121 F.3d at 162). "Second, the court was concerned that relying on the defendant's subjective knowledge or efforts to discover whether jurisdiction existed apart from the complaint would encourage premature removals by a defendant afraid of waiving their right to remove." *Cretian v. Job1USA, Inc.*, No. CV-09-770-ST, 2009 WL 4841039, *4 (D. Or. Dec. 11, 2009) (citing *Harris*, 425 F.3d at 697). "[T]he court noted

---

[5]The *Harris* court discussed in detail the Fourth Circuit's opinion in *Lovern v. General Motors Corp.*, 121 F.3d 160 (4th Cir. 1997). It noted that, "[i]n rejecting the defendant's subjective knowledge as a test for notice, the Fourth Circuit emphasized reliance on 'the four corners of the initial pleading or subsequent paper.'" *Harris*, 425 F.3d at 695 (quoting *Lovern*, 121 F.3d at 162). The Fourth Circuit had held that it would "allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Id.* (quoting *Lovern*, 121 F.3d at 162).

[6]The Ninth Circuit in *Harris* relied heavily on its prior decision in *Cantrell v. Great Republic Insurance Co.*, 873 F.2d 1249 (9th Cir. 1989). There, plaintiff filed a suit completely preempted by the Employee Retirement Income Security Act ("ERISA"). Removal was based on an amended complaint. The only difference between the original and amended complaint was that in the amended complaint, plaintiff sued in a representative capacity and added an additional defendant. Without conceding that either complaint supported federal question jurisdiction, plaintiff asserted that if the amended complaint was removable, the original complaint was as well. *Id.* at 1254. The Ninth Circuit agreed, concluding that the changes made by plaintiff in the amended complaint did not render it "an amended pleading . . . from which it *first* may be ascertained that the case is one which is or has become removable." *Id.* at 1255 (emphasis original).

that 'a bright-line approach'" served the jurisdictional and procedural interests of bringing certainty and predictability to the process, avoiding gamesmanship in pleading, and 'avoid[ing] the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient "clue," whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry.'" *Sweet v. United Parcel Service, Inc.*, No. CV 09-02653 DDP (RZx), 2009 WL 1664644, *4 (C.D. Cal. June 15, 2009) (quoting *Harris*, 425 F.3d at 697).

As a consequence, under *Harris*, defendants must "point to their receipt of any 'paper' that would trigger the extended 30-day removal period." *Kohan Productions Ltd. v. Comerica Bank*, No. CV 10-0034 PSG (AJWx), 2010 WL 956402, *4 (C.D. Cal. Mar. 11, 2010). In *Kohan*, plaintiffs filed suit against Comerica Bank and Comerica Bank-California in state court. The initial complaint did not allege defendants' citizenship, apart from pleading that Comerica was a Texas corporation and Comerica-California was a division or subsidiary of Comerica. In reality, Comerica-California was not in existence at the time plaintiffs filed the initial complaint, but had merged with Comerica, which was in fact a Michigan corporation. Plaintiffs filed a first amended complaint following a demurrer that made the same citizenship allegations. Defendants contended that Comerica-California's citizenship could be disregarded because it had been fraudulently joined. Judge Philip Gutierrez, however, held that the removal was procedurally defective because defendants did "not point to their receipt of any 'paper' that would disclose jurisdictional facts for the first time in the case." *Id.* Specifically, he noted that it was inappropriate to relieve Comerica of the requirement that it *receive* some paper initiating a second thirty-day window simply because it knew of Comerica-California's merger and subsequent dissolution. To hold otherwise, he stated, would lead to "the unacceptable conclusion that § 1446(b) imposed absolutely no time restriction on [defendant's] removal based on fraudulent joinder – the first 30-day window did not apply because the initial Complaint was indeterminate and the extended 30-day window did not apply because [it] did not receive any 'paper' disclosing jurisdictional facts." As a consequence, Judge Gutierrez noted, defendant would be able to remove at any time during the one year that followed the filing of the initial complaint. He concluded that such a rule would vitiate the holding of *Harris*, which emphasized the existence of two distinct thirty-day windows, each triggered by a paper received by the defendant.

Similarly, in *KDY, Inc. v. Hydroslotter Corp.*, No. 08-4074 SC, 2008 WL 4938281 (N.D. Cal. Nov. 17, 2008), the court held that where the removing defendants could not point to receipt of "any subsequent pleadings or documents . . . that would have indicated the citizenship of" the defendants, "the only pleading from which Defendants might garner sufficient information to determine that there was indeed diversity jurisdiction was the original Complaint." *Id.* at *2. See also *id.* at *4 ("What should be apparent is that § 1446's additional time limit is triggered when the complaint does not contain sufficient information for the defendant to determine whether the action is removable and when the defendant receives additional papers from the plaintiff that alert the defendant to federal jurisdiction. In the present case, Defendants concede that they never received additional papers from Plaintiff. The only conclusion the Court can draw from this is that Plaintiff's initial Complaint contained sufficient information so that Defendants were on notice as to the

existence of diversity jurisdiction").[7]

In *Molina v. Lexmark International, Inc.*, No. CV 08-04796 MMM (FMx), 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008), plaintiff argued that the defendant could have used an "obvious formula" based on defendant's own employee records to calculate the amount in controversy. The court held, however, that "a defendant's own records cannot logically constitute 'other paper' under § 1446(b)," *id.* at *18, and that, "[e]ven if Lexmark could have ascertained that the amount in controversy exceeded $5 million by reviewing its own records . . . this would not have triggered the thirty day period for removal under § 1446(b)." *Id.* Similarly, in *Munoz v. J.C. Penney Corp., Inc.*, No. CV09-0833 ODW (JTLx), 2009 WL 975846 (C.D. Cal. Apr. 9, 2009), plaintiff asserted that defendants' own filings with the Securities and Exchange Commission provided the information necessary to ascertain that the case was removable. Judge Otis Wright rejected plaintiffs' contention that defendants had a duty to perform "grade-school mathematics" based on their knowledge of their own financial situation. *Id.* at *2.

### B.     Whether Defendants' Notice of Removal Was Filed Within the Statutory Time Period

Defendants' argument that removal was proper in this case is premised not on a different interpretation from plaintiffs' of the papers filed and exchanged by the parties, but on a misapprehension of the law. Defendants argue that the "original Complaint and the First Amended Complaint do not contain specific allegations regarding the amount of damages so as to establish that the amount in controversy exceeds CAFA's $5,000,000 jurisdictional requirement."[8] Indeed, defendants emphasize that plaintiffs "concede and insist that the basis for removal does not appear

---

[7]The requirement that the removing defendant receive a pleading or "other paper" means that the "document that triggers the thirty-day removal period cannot be one created by the defendant." *Rossetto v. Oaktree Capital Management, LLC*, 664 F.Supp.2d 1122, 1129 (D. Haw. 2009). Thus, "the 'amended pleading, motion, order or other paper' must derive from 'either the voluntary act of the plaintiff in the state court, or other acts or events not the product of the removing defendant's activity.'" *Smith v. Int'l Harvester Co.*, 621 F.Supp. 1005, 1007 (D. Nev. 1985) (quoting *Potter v. Carvel Stores of New York, Inc.*, 203 F.Supp. 462, 467 (D. Md. 1962)). See also *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) ("[T]he 'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction"). In addition, the document providing grounds for removal must be one filed in state court. *Peabody v. Maud Van Cortland Hill Schroll Trust*, 892 F.2d 772, 775 (9th Cir. 1989) ("The record of the state court is considered the sole source from which to ascertain whether a case originally not removable has since become removable").

[8]Opp. at 2 (internal quotations omitted).

6

on the face of the documents."[9]  Defendants' argument, in summary, is that because the jurisdictional requirements for removal have not yet appeared on the face of any paper, "no 30-day period has begun to run, let alone expired."[10]  Defendants note that during the meet and confer process, they advised plaintiffs that "no pleading or other paper establishing a basis for removal had been served so as to start any 30-day removal period."[11]  Defendants quote an email they sent plaintiffs stating:

> "The pertinent inquiry for purposes of establishing an untimely removal is when did [plaintiffs] serve a paper in this litigation that plainly put defendant on actual (not inquiry) notice that there was a basis to remove including (i) that the amount in controversy exceeded the removal threshold and (ii) that requisite diversity existed? I am unaware of such paper. If you believe that you have served such a paper, we invite you to identify it NOW and identify NOW WHERE that paper makes these disclosures."[12]

Finally, defendants indicate that "[a]ll agree that a basis for removal does not appear on the face of the pleading."[13]

   Given defendants' disavowal of a necessary prerequisite to removal, the court need not proceed further. Defendants have not received from plaintiffs any pleading or other paper setting forth a basis for jurisdiction.

   In any event, the court concurs with plaintiffs that to the extent the first amended complaint put defendants on notice of relevant jurisdictional allegations, those allegations were also contained in the original complaint. Both pleadings allege that the class or classes are comprised only of California residents. In the original complaint, plaintiff sought to represent a class of Californians who purchased certain specific food products from a Panda Express restaurant in the state during the past four years. The amended class definition included Californians who purchased vegetarian or meat-free dishes from a Panda Express restaurant in the state during the same period. Both the original and first amended complaints are "indeterminate" pleadings; neither establishes that minimal diversity exists or that the amount in controversy requirement is satisfied. Defendants agree on this point. In their opposition, they state that the pleadings do not "reveal that any member of the putative class was [not] a California citizen as of the date of the pleading" and consequently that "minimal

---

[9]*Id.* (emphasis original).

[10]*Id.*

[11]*Id.* at 3.

[12]*Id.*

[13]*Id.* at 3-4.

diversity . . . does not appear on the face of the pleading."[14] Defendants further state that the "original Complaint and the First Amended Complaint do not contain specific allegations regarding the amount of damages."[15]

In their notice of removal, defendants asserted that the inclusion of the Defrauded Class, encompassing all persons, not simply vegetarians, who purchased meat-free dishes, permitted them to investigate their own financial records and tally the profits generated by each of the identified food products during the class period in California. Defendants abandoned this argument in their opposition, as this type of internal investigation would represent no more than defendants' subjective belief about the amount in controversy based on knowledge in their possession. It is not information drawn from the four corners of any pleading or other paper received from plaintiff. Moreover, to credit this argument, the court would have to engage in a mini-trial to determine if a similar internal financial investigation would have put defendants on notice at the time the original complaint was filed that the amount in controversy exceeded $5,000,000. This is precisely the inquiry *Harris* precludes.

In *Rossetto*, the district court employed a different phrase to describe why there was a procedural defect in removal; because the "thirty-day removal period ha[d] not yet begun," it found that the "request for removal was premature rather than untimely." *Rossetto*, 664 F.Supp.2d at 1130. The court adopts this language, and concludes that defendants' removal was premature. It may lack efficiency to require the parties to return to state court until defendants receive a paper from plaintiffs conceding that the amount in controversy exceeds $5 million and that the citizenship of the parties is minimally diverse. Nonetheless, this is precisely what § 1446(b) requires. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 691-92 (9th Cir. 2006) ("Dow removed this action to district court a mere seven days after the workers filed their First Amended Complaint, and less than a month after the case was filed. Once in federal court, Dow failed to present to the district court any pleading, evidence, or admission that establishes that it is more likely than not that jurisdiction lies. On these facts, it is well within the court's discretion to remand to state court rather than ordering jurisdictional discovery, with the knowledge that later-discovered facts may prompt a second attempt at removal. Doing so avoids encouraging the sort of premature removal presented to us here").

### III. CONCLUSION

For the foregoing reasons, the court grants plaintiffs' motion to remand. The clerk is ordered to remand the action to Los Angeles Superior Court forthwith.

Because the court remands this action due to a procedural defect, the court declines to

---

[14]Opp. at 4 n. 5.

[15]*Id.* at 3-4.

plaintiffs' remaining arguments in support of remand, many of which require further factual development to consider. Because it lacks jurisdiction, the court declines to decide defendants' motion to dismiss and/or strike, which can be raised in state court.